IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LIONEL MEREDITH[1]                          :

                                             :

    v.                          :   Civil Action No. DKC 19-3198

                                             :

PRINCE GEORGE'S COUNTY, et al.              :
                                           :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights case is a motion for summary judgment filed by Defendants Prince George's County and Officer Tommy M. Thomas.  (ECF No. 38). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion for summary judgment will be granted in part and denied in part.

**I.   Factual Background**

On the morning of February 25, 2016, Plaintiff Lionel Meredith walked to a Target store and bought a pair of Bluetooth headphones. (ECF Nos. 38-4, at 23 (Thomas Depo.); 38-5, at 11-12 (Meredith Depo.)).[2]  He charged the headphones in the store, paired them with

---

[1] The complaint apparently misspelled Plaintiff's last name and, as a result, so does this court's docket.  The clerk will be directed to correct the spelling.

[2] Deposition citations are to the transcript page number, rather than the ECF page number.

his phone, and left.  (ECF No. 38-5, at 21, 25-26).  On his way out of the building, he made a phone call.  (*Id.*, at 26, 28).  As he walked across the parking lot talking on the phone, a police SUV cruiser came up from behind and cut him off.  (*Id.*, at 20, 32).  Unbeknownst to Mr. Meredith, Target personnel had told Defendant Tommy M. Thomas, a Prince George's County police officer, that the man walking across the parking lot stole an employee's phone.  (ECF Nos. 38-4, at 25-27; 38-5, at 21-22, 32, 34).

The parties dispute what happened after Officer Thomas received that call.  According to Mr. Meredith, Officer Thomas never said anything to him, let alone shouted for him to stop, and that he would have heard if Officer Thomas had.  (ECF Nos. 40-3, at 32-33 (Meredith Depo.); 38-5, at 34).  Mr. Meredith only became aware of Officer Thomas after the Officer pulled up in his car.  (ECF No. 38-5, at 34).  Mr. Meredith immediately stopped walking and stretched his arms out "to look as nonaggressive as possible." (*Id.*, at 34, 43).  Officer Thomas then emerged from his vehicle with his gun drawn.  (ECF No. 38-6 at 3 (Meredith Interrogatories); *see also* 38-5, at 41).  Officer Thomas then switched to his taser and approached.  (ECF No. 38-6, at 3).  Officer Thomas put his knee in Mr. Meredith's back, handcuffed him, and yelled, "Where is it?  Where is the phone?"  (*Id.*).

Officer Thomas maintains that he told Mr. Meredith to stop multiple times but that Mr. Meredith continued walking even after

2

he pulled up in his vehicle.  (ECF No. 38-4, at 27, 29, 31, 54-55).  After getting out, he again told Mr. Meredith to stop and still Mr. Meredith continued on.  (*Id.*, at 31, 63).  Officer Thomas then pulled out his taser and pointed it at Mr. Meredith to get him to stop.  (*Id.*, at 31-33, 36-37, 55, 59).  He ordered Mr. Meredith to the ground and handcuffed him.  (*Id.*, 65-66; 71-72).  Officer Thomas does not remember putting his knee in Mr. Meredith's back.  (*Id.*, at 71).  Officer Thomas then frisked Mr. Meredith on "officer safety" grounds.  (*Id.*, at 36).  It is not clear whether Officer Thomas suspected that Mr. Meredith had a weapon.  (*Compare id.*, at 36; ECF No. 40-4, at 40-41 (Thomas Depo.), *with* ECF No. 38-4, at 86;).  Officer Thomas apparently pats down everyone he stops.  (*Id.*, at 45-46).  He maintains that he did not "search" Mr. Meredith for a cell phone.  (*See id.*, at 72).

After Mr. Meredith was detained, two other officers arrived on the scene.  (ECF No. 40-3, at 31).  Officer Thomas drove off to confirm the details of the stolen phone, leaving Mr. Meredith with the other officers.  (ECF Nos. 38-4, at 72; 38-5, at 35-36).  Target personnel told Officer Thomas that there had been a mistake, the cell phone was never stolen in the first place.  (ECF Nos. 38-4, at 72-73, 92; 38-3, at 2 (Thomas Interrogatories)).  Officer Thomas returned, uncuffed Mr. Meredith, and allowed him to leave.  (ECF Nos. 38-4, at 74; 38-5, at 39-40).  Officer Thomas estimates that Mr. Meredith was handcuffed on the ground for two-to-three

minutes.  (ECF No. 38-4, at 75-76).  County documents may indicate
that the stop lasted thirty minutes.  (*See* ECF No. 40-6, at 3 (Pub.
Safety Commc'ns Incident Details)).  Mr. Meredith does not know
how much time passed.  (ECF No. 38-5, at 40-41).  Mr. Meredith
suffered lower back pain for about two months afterwards.  (ECF
No. 40-3, at 30).

## II.  Procedural Background

On August 23, 2016, Mr. Meredith notified Prince George's
County of his intent to sue.  (ECF No. 40-1).  He filed this
lawsuit in state circuit court on February 22, 2019, naming the
County, "Officer Thompson (John Doe #1)," and two other "John Does"
as Defendants.  (ECF No. 3).  Summonses were issued on that date
and again on May 31, 2019 but were not served.  (ECF No. 1-3, at
2; *see also* ECF Nos. 1-8; 1-11 through 1-14).  He amended his
complaint on August 16, (ECF No. 4), and served Prince George's
County on October 10, (ECF No. 1-6).  Officer Thomas testifies
that he first became aware of the suit that same month—October
2019—when notified by counsel.  (ECF Nos. 38-4, at 85; 41-1, ¶ 3).
The County removed to this court on November 5 and answered shortly
thereafter.  (ECF Nos. 1; 2; 7).

During discovery, Mr. Meredith identified Officer Thomas and
moved in May 2020 for leave to amend his complaint a second time
by substituting him for "Officer Thompson (John Doe #1)" and
removing the other "John Does."  (ECF No. 20, ¶¶ 4-7; *see* ECF No.

4

20-5).  The County opposed, arguing that the statute of limitations had run for claims against Officer Thomas.  (ECF No. 21).  After a hearing, Judge Paula Xinis granted the motion to amend but preserved Officer Thomas' ability to raise his statute of limitations defense at summary judgment.  (ECF Nos. 27; 28).  Officer Thomas consented to service and answered.  (ECF Nos. 33; 38-1, at 4).  The second amended complaint presents two claims against Officer Thomas for (1) false imprisonment or arrest under Maryland law, and (2) Fourth Amendment unreasonable seizure and excessive use of force under 42 U.S.C. § 1983, and a third claim against the County for (3) failure to train, supervise, and discipline under Section 1983.  (ECF No. 28, at 4-6).

In March 2021, Defendants moved for summary judgment.  (ECF No. 38).  Mr. Meredith responded, (ECF No. 40), and Defendants replied, (ECF No. 41).  In October, the case was reassigned to this member of the bench.

## III. Analysis

### A.    Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "[S]ummary judgement should be granted only when it is perfectly clear that

no issue of material fact exists." *Raynor v. Pugh*, 817 F.3d 123, 129 n.2 (4th Cir. 2016) (quotation omitted).  A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Liberty Lobby*, 477 U.S. at 248.  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  A court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted), but "a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences," *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001).

To prevail on a motion for summary judgment, the moving party generally bears the burden of showing that there is no genuine dispute as to any material fact.  No genuine dispute of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element that he bore the burden to prove. *Celotex*, 477 U.S. at 322–23.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there is a genuine issue for trial. *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D.Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014).

### B.   Officer Thomas

Officer Thomas argues that he is entitled to judgment because Plaintiff's claims against him are barred by the statute of limitations.  (ECF No. 38-1, at 12-18).  He also argues that the evidence does not support finding that he falsely arrested Mr. Meredith or violated his Fourth Amendment rights.  (*Id.*, at 18-26).  Last, he contends that he is entitled to qualified immunity on Mr. Meredith's Section 1983 claims.  (*Id.*, at 26-28).

### 1.   Statute of Limitations

The statute of limitations had run when Officer Thomas was joined as a defendant.  He asserts, and Mr. Meredith does not dispute, that the state and federal causes of action accrued on February 25, 2016.  Maryland law establishes a three-year limitations period for both the false imprisonment/arrest claim and the Section 1983 claims.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007); Md. Code Ann., Cts. & Jud. Proc. § 5-101.  The limitations period therefore ran on Mr. Meredith's claims on February 25, 2019.  Mr. Meredith filed suit against Prince George's County and "Officer Thompson (John Doe #1)" three days prior.  The case was removed in November 2019 and Mr. Meredith moved to add Officer Thomas in May 2020, more than a year after the limitations period had run.

Mr. Meredith can only proceed if his claims against Officer Thomas "relate back."  This question is governed by the Federal Rules of Civil Procedure because Mr. Meredith moved for leave to

amend after removal.  *See Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946-47 (5th Cir. 2014) (holding that whether a plaintiff moves to amend before or after removal determines the applicable relation back rule); *Pac. Emp'rs Ins. v. Sav-A-Lot*, 291 F.3d 392, 399-401 (6th Cir. 2002) (same); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 611 (4th Cir. 1980) (holding federal rules control for state law claims).  Relation back balances a defendant's statute-of-limitations interest in repose from suit against the general preference for resolving disputes on their merits.  *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010); *see also Goodman v. Praxair, Inc.*, 494 F.3d 458, 467-68 (4th Cir. 2007) (en banc).

Under Fed.R.Civ.P. 15(c)(1)(C), an amendment that "changes [a] party or the naming of [a] party" can relate back to an original timely complaint and satisfy the limitations period if it meets three requirements.  First, the claim must involve the same transaction or occurrence.  *Goodman*, 494 F.3d at 467.  Second, the new party must have "notice of the action" "within the period provided by Rule 4(m) for service of the summons and complaint" and must have known or should have known that, "but for a mistake in identity," "the action would have been brought against him."  Fed.R.Civ.P. 15(c)(1)(C); *see Goodman*, at 467, 469-71.  Third, the notice must have been such that the party "will not be prejudiced in defending on the merits."  *Id.*

Officer Thomas does not dispute that the claims against him involve the same transaction or occurrence as those asserted in the first amended complaint. (ECF No. 41, at 12-13). He appears to argue instead that Rule 15(c)(1)(C) does not apply in the first instance, and, even if it does, that he did not have proper notice of the action, should not have known Mr. Meredith would have sued him but for a mistake, and was prejudiced by his late addition. As discussed below, Mr. Meredith's claims against Officer Thomas relate back and are not barred by the statute of limitations.[3]

**a)   Applicability**

Officer Thomas argues that "John Doe" defendants are not parties under Maryland law and therefore "Officer Thompson (John Doe #1)" was not a party when the case was removed to this court. (ECF No. 38-1, at 12-13). Although not clearly stated, he appears to contend that, as a result, Rule 15(c)(1)(C) does not apply because Mr. Meredith's amendment sought to add Officer Thomas as a new party rather than "change" an existing party. Officer Thomas is wrong, even assuming he correctly states Maryland law. A "change" under Rule 15(c)(1)(C) does not require formal substitution of one party for another. *Goodman*, 494 F.3d at 468-69. Adding a party will do. *Id.*

---

[3] This opinion does not address Rule 15(c)(1)(A) which permits relation back where "the law that provides the applicable statute of limitations allows[.]"

### b)   Notice

A newly named defendant must receive "'notice of the action' within the Rule 4(m) period[.]" *Krupski*, 560 U.S. at 554 n.5 (quoting Fed.R.Civ.P. 15(c)(1)(C)).  He must also "have expected or should have expected . . . that [he] was meant to be named a party in the first place[.]" *Goodman*, 494 F.3d at 471.

The period for service under Fed.R.Civ.P. 4(m) is 90 days. "Typically, 'in removed cases, the Rule 4(m) time period starts to run upon removal to the federal district court, not the date the action was originated in state court.'" *Thompson v. Dollar Tree Stores, Inc.*, No. 17-cv-3727-PWG, 2019 WL 414881, at *3 (D.Md. Feb. 1, 2019) (quoting 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1137 (4th ed. 2015)); *see* Fed.R.Civ.P. 81(c)(1); *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 858 (10th Cir. 2018) (citing *Cardenas v. Chicago*, 646 F.3d 1001, 1004 (7th Cir. 2011) (collecting cases)); *see also* 28 U.S.C. § 1448. The parties do not discuss, and no circuit precedent appears to resolve, whether the same rule applies when calculating the start of the 4(m) period for Rule 15(c)(1)(C) purposes.  Two recent decisions in this district demonstrate that it likely does.  "Rule 15 does not distinguish between" original actions and removal actions, *Czach v. Int'l Hotels Grp. Res., LLC*, No. 20-cv-0125-DLB, 2020 WL 6150961, at *8 (D.Md. Oct. 20, 2020), nor does "case law

10

or [an] advisory committee note provid[e] for an exception," *Thompson*, 2019 WL 414881, at *3.[4]

Based on that analysis, Officer Thomas received adequate notice of the action.  The case was removed to this court on November 5, 2019.  Officer Thomas must have had notice of it by February 3, 2020.  He testifies, and Mr. Meredith does not dispute, that he first became aware of the suit on October 28, 2019, well before the deadline. (ECF Nos. 38-4, at 85; 41-1, ¶ 3).  (Notably, Officer Thomas would not have had enough notice if Rule 4(m), as applied under Rule 15(c)(1)(C), required looking to the date that the original complaint was filed in state court.)

He also knew or should have known that Mr. Meredith intended to name him as a defendant in the first place.  This question turns on "the type of notice or understanding that the new party had." *Goodman*, 494 F.3d at 470.  It does not turn on the type of mistake

---

[4] *See also Hardy-roy v. Shanghai Kindly Enters. Dev. Grp. Co.*, No. 20-cv-0373-NYW, 2021 WL 229282, at *4 & n.6 (D.Co. Jan. 22, 2021); *Lamendola v. Bd. of Cnty. Comm'rs*, No. 18-cv-0163-KBM, 2019 WL 2371714, at *6 (D.N.M. June 5, 2019); *Bondurant v. City of Battleground*, No. 15-cv-579-KLS, 2016 WL 5341966, at *5 (W.D.Wash. Sept. 23, 2016); *Lee v. City of Fayetteville*, No. 15-cv-0638-FL, 2016 WL 1266597, at *8 (E.D.N.C. Mar. 30, 2016); *Hoffman v. Daimler Trucks N. Am.*, 940 F.Supp.2d 347, 363 n.15 (W.D.Va. Apr. 12, 2013); *Dietz v. McAdams-Norman Property, II, LLC*, No. 12-cv-0509-JCT, 2013 WL 247651, at *3-4 (W.D.Va. Jan. 23, 2013); *cf. Washington v. Roundy's Ill., LLC*, No. 19-cv-3054, 2020 WL 374696, *6 & n.9 (D.N.D. Jan. 23, 2020) (declining to decide).  *But see Mendez v. Jarden Corp.*, 503 F.App'x 930, 937 (11th Cir. 2013); *Robinson v. Se. Pa. Transp. Auth.*, No. 21-cv-4050, 2021 WL 5330401, at *8 n.99 (E.D.Pa. Nov. 16, 2021); *Acosta-Felton v. Greinke*, No. 11-cv-3103-RDR, 2013 WL 615469, at *2 (D.Kan. Feb. 19, 2013).

made – relation back can apply as equally to "typographical mistakes" as to "oversights or mistakes of inclusion or omission." *Id.*, at 471.

Officer Thomas admits that he was made aware of an "intent to sue [him]" in October 2019.  (ECF No. 41-1, ¶ 5).  Not only does this admission seem fatal to his position, but Officer Thomas does little to combat it because he mistakenly assumes that the 4(m) period begins at the filing of the original state complaint.  To the extent, however, he suggests that Mr. Meredith filed a "John Doe" complaint which made it impossible for him to recognize Mr. Meredith's intent to sue, he is wrong.  First, Mr. Meredith's use of "Officer Thompson (John Doe #1)" is not the same as using "John Doe" to stand in for an entirely unknown defendant.  Unlike "John Doe" alone, "Officer Thompson (John Doe #1)" includes identifying information that narrows the group of possible defendants.  It provides a real name, and one similar to the name intended.  The inclusion of "John Doe" is a red herring.  It acknowledges only that the name given may be incorrect but does not assert that the proper identity is entirely unknown.

Even if the complaint could be labeled a "John Doe" complaint, Officer Thomas would still have had sufficient notice.  While many circuits bar relation back when a plaintiff moves to substitute a new party for a "John Doe" defendant, the Fourth Circuit does not. *See Goodman*, 494 F.3d at 469-73; *Locklear v. Bergman & Beving AB*,

12

457 F.3d 363, 367 (4th Cir. 2006) (describing out-of-circuit practice).  It has made clear that relation back turns on notice and prejudice to the new party.  *Goodman*, 494 F.3d at 469-71.  In most "John Doe" cases, that is enough to block relation back because the new party could not have expected that he was meant to be sued in the first place.  *Id.*, at 471.

This case, however, would be one of the few where the new party should have realized he was an intended defendant.  Not only does Officer Thomas admit as much, but almost any information from the first amended complaint would make that clear.  It describes in detail the incident in the Target parking lot.  (*See generally*, ECF No. 4).  It also names "Officer Thompson (John Doe #1)."  As noted above, "Thompson" is close enough to "Thomas" to suggest, in concert with the factual detail alleged, that Mr. Meredith merely misremembered the relevant officer's name.  In addition, it was always clear, as Judge Xinis noted at the October 13, 2020 Motions Hearing, that Mr. Meredith intended to amend his complaint once Officer Thomas had been identified to him.  (*See also* ECF No. 11, at 2 (describing Mr. Meredith's December 2019 proposal to join all defendants once identified by the County in initial disclosures)).

### c)  **Prejudice**

The timely notice Officer Thomas received also eliminated any risk of prejudice to him.  A new party is not prejudiced when "the proceedings [have] not advanced to the point that he could show

13

any prejudice with regard to his presentation or preparation of his defense." *Robinson v. Clipse*, 602 F.3d 605, 609 (4th Cir. 2010) (alterations and quotation omitted). Officer Thomas was aware of the action at the outset, before the County had answered or discovery had begun. Not only did he have time to prepare a defense, but he could easily have coordinated with the County because he shares the same attorney and the parties' interests overlap. In addition, Officer Thomas has fully participated in this case since being added. Mr. Meredith moved for leave to amend within the time required by the scheduling order. Only limited discovery occurred before Officer Thomas was added. Once joined, he answered, depositions were taken, and Defendants filed the dispositive motion now before the court.

Mr. Meredith's second amended complaint relates back and his claims against Officer Thomas can proceed.

### 2. False Imprisonment/Arrest and Fourth Amendment Unreasonable Seizure

Mr. Meredith's false imprisonment/arrest claim and his Fourth Amendment unreasonable seizure claim are assessed together because the disputed legal requirements merge. The questions at issue under both are: (1) what type of detention did Officer Thomas effect, and (2) did he have enough reason to suspect Mr. Meredith to justify a stop or arrest. Both Maryland law and the Fourth Amendment are violated if Officer Thomas made an investigatory

14

stop, also known as a *Terry* stop, without a reasonable, articulable suspicion of wrongdoing. *Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 460 (4th Cir. 2013); *Ashton v. Brown*, 339 Md. 70, 119-20 (1995); *see also Foster v. Balt. Police Dep't*, No. 1666, 2021 WL 3261217, at *9-10 (Md.Ct.Spec.App. July 30, 2021) (unpublished). And they are violated if Officer Thomas made an arrest without probable cause. *Id.* If an arrest did occur, Officer Thomas specifically needed probable cause to believe Mr. Meredith was stealing a phone in his presence because that is likely misdemeanor theft, as Defendants suggest, (ECF No. 38-1, at 23). *See Maryland v. Pringle*, 540 U.S. 366, 370 (2003); Md. Code Ann., Crim. Proc. § 2-202(b); *id.*, Crim. Law § 7-104(g)(2).

Officer Thomas contends that he only stopped Mr. Meredith but that he is entitled to judgment either way because he had reasonable suspicion, and probable cause to believe, that Mr. Meredith was committing theft in his presence. (ECF No. 38-1, at 20, 22-23). In response, Mr. Meredith fails to meet his burden to point to facts that could support finding that Officer Thomas detained him without reasonable suspicion or probable cause. Indeed, he essentially abandons his false imprisonment/arrest and unreasonable seizure claims altogether. Although his memorandum includes two sections ostensibly devoted to unreasonable seizure, Mr. Meredith makes no real attempt there or elsewhere to argue anything other than excessive force. (*See generally* ECF No. 40,

at 18-26).   At most, Mr. Meredith could be construed to suggest that Officer Thomas lacked justification to frisk him.  (*See id.*, at 22-23).  But those statements only introduce evidence of Officer Thomas' attitude toward frisking individuals as evidence of the Officer's disregard for the Fourth Amendment.   In any case, the operative complaint, (ECF No. 28), does not mention Mr. Meredith being patted down or assert an unreasonable search claim.

Officer Thomas is entitled to judgment on Mr. Meredith's false imprisonment/arrest and unreasonable seizure claims.  Accordingly, summary judgment will be granted on Count I in full, and on a portion of Count II.

### 3.   Fourth Amendment Excessive Force

Excessive    force    claims    are    analyzed    under    "an 'objective reasonableness' standard," looking to the totality of the circumstances of each case.   *Yates v. Terry*, 817 F.3d 877, 884-85 (4ᵗʰ Cir. 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  This requires balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (quotation omitted).  Whether an officer's actions were reasonable is determined "from the perspective of a reasonable officer on the scene" with the same "information possessed by the [defendant] officer at the moment at the moment force is employed."  *Graham*,

490 U.S. at 396 (citation omitted); *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005) (citation omitted).  Relevant factors in making this determination include (1) the severity of the crime, (2) whether there is an immediate threat to the safety of the officer or others, and (3) whether the subject is resisting his detention or attempting to flee.  *Yates*, 817 F.3d at 885 (citing *Graham*, 490 U.S. at 396).

Clear disputes of material fact preclude awarding judgment on the merits of Mr. Meredith's excessive force claim.  As noted above, it appears undisputed that Mr. Meredith was suspected of misdemeanor theft, a relatively minor crime.  But the parties disagree about whether Officer Thomas told Mr. Meredith to stop before drawing a weapon and, as a result, about whether Officer Thomas could reasonably have perceived Mr. Meredith to be fleeing or to be a threat.  They also disagree about whether Officer Thomas drew his gun or placed his knee in Mr. Meredith's back.  Taken in the light most favorable to Mr. Meredith, a jury could find that Officer Thomas pointed his gun and taser, without warning, at a man suspected of a minor, non-violent offense who was not running away or threatening anyone (as Officer Thomas may admit).  Then, after he'd stopped walking, made every effort to demonstrate he wasn't a threat, and complied with commands to get on the ground, the Officer dug his knee into the man's back with enough force to leave him in pain for two months and handcuffed him.  The jury

17

could conclude that was disproportionate and unreasonable. *See,
e.g.*, *Turmon v. Jordan*, 405 F.3d 202, 207-08 (4th Cir. 2005); *Young
v. Prince George's Cnty.*, 355 F.3d 751, 757-58 (4th Cir. 2004);
*Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994).

### 4.  Qualified Immunity

Qualified immunity is an affirmative defense to Section
1983 claims that "protects government officials from liability
for civil damages insofar as their conduct does not violate
clearly established statutory or constitutional rights of which
a reasonable person would have known." *Pearson v. Callahan*,
555 U.S. 223, 231 (2009) (quotation omitted).  The two elements
of the defense are whether a constitutional violation
occurred and, if so, whether the right in question was
clearly established at the time of the alleged misconduct.
*Tobey v. Jones*, 706 F.3d 739, 385 (4th Cir. 2013).  Mr.
Meredith has carried his burden to point to sufficient facts
for a reasonable jury to conclude that his right to be free
from excessive force was violated.  Officer Thomas "bear[s]
the burden of showing that the violation was not clearly
established[.]" *Mays v. Sprinkle*, 992 F.3d 295, at 302 n.5
(4th Cir. 2021).

"To be clearly established, a legal principle must be
settled law, which means it is dictated by controlling
authority or a robust consensus of cases of persuasive

authority." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 704 (4th Cir. 2018). Although the principle must be particularized, *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014), "a court need not have previously found the specific conduct at issue to have violated an individual's rights," *Feminist Majority*, 911 F.3d at 704.

Officer Thomas fails to meet his burden. In his initial motion, he points to a single case about firing a taser. (ECF No. 38-1, at 27). Only on reply does Officer Thomas acknowledge that Mr. Meredith introduced facts tending to show that he pointed his gun at Mr. Meredith and dug his knee into Mr. Meredith's back after ordering him onto the ground. Officer Thomas points to no cases dealing with either of those facts, or the use of handcuffs, does not argue that there is an absence of such cases, and does not explain how the legal doctrine in the case it cites fails to reach those facts. (ECF No 41, at 17). That is not enough.

The case Officer Thomas points to isn't even enough to support his taser argument and, if anything, undercuts it. There, the Fourth Circuit held that its precedent "makes clear that a nonviolent misdemeanant who is compliant, is not actively resisting arrest, and poses no threat to the safety of the officer or others should not be subjected to 'unnecessary, gratuitous, and disproportionate force.'" *Yates*, 817 F.3d at 888 (quoting *Meyers v. Baltimore Cnty.*, 713 F.3d 723, 735 (4th Cir. 2013)).

At bottom, Officer Thomas' argument also fails because he premises it on his version of events and does not attempt to argue that he is entitled to qualified immunity on the facts most favorable to Mr. Meredith.  A claim of qualified immunity cannot be resolved in favor of a defendant where it hinges on disputes of material fact. *Williamson v. Stirling*, 912 F.3d 154, 177 (4th Cir. 2018) (quotation omitted).

Officer Thomas is not entitled to judgment on Mr. Meredith's excessive force claim because it is not time barred, there are genuine disputes of material fact, and he is not immune from suit. Accordingly, summary judgment will be denied as to a portion of Count II.

### C.   Prince George's County

A local municipality can be liable for an employee's conduct under Section 1983 if:  (1) it had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  The only question left at issue is whether the County had an unconstitutional custom of using excessive force.  Mr. Meredith has pointed to sufficient evidence that excessive force was used against him (but not that

he was falsely imprisoned or arrested), as discussed above, and the County does not challenge causation.[5]

For a plaintiff to show that a local custom existed, "(1) the municipality must have actual or constructive knowledge of the custom and usage by its responsible policymakers, and (2) there must be a failure by those policymakers, as a matter of specific intent or deliberate indifference, to correct or terminate the improper custom and usage." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 210 (4th Cir. 2002) (quotation omitted).

In Section 1983 police misconduct suits, municipal liability typically arises in two forms:   (1) when "programs of police training and supervision [] are claimed to have resulted in constitutional violations by untrained or mis-trained police officers", and (2) when an "municipal policymakers [fail] to put a stop to or correct a widespread pattern of unconstitutional conduct by police officers of which the specific violation is simply an example." *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987).  Mr. Meredith appears to allege both. (*See* ECF No. 28, at 6).   In opposition, however, he argues only that the County condoned widespread use of excessive force.  (ECF No. 40, at 28-

---

[5] The County also argues for dismissal for failure to state a claim.  (ECF No. 38-1, at 28-32).  The County's motion is treated as one for summary judgment because it was styled that way, (ECF No. 38), and both sides have proffered evidence after discovery.

33).  The County is therefore entitled to judgment on any failure-to-train theory.

To prove that the County condoned excessive force, Mr. Meredith must show:  (1) a "persistent and widespread practice[ ] of municipal officials," (2) that policymakers knew about, and (3) failed to correct due to their "deliberate indifference." *Spell*, 824 F.2d at 1386, 1391 (alterations omitted); *see also Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 402-03 (4th Cir. 2014).  The duration, frequency, and extent of employees' misconduct can support finding that policymakers had actual or constructive knowledge and that their failure to stop the conduct constituted deliberate indifference.  *Spell*, 824 F.2d at 1387, 1391.  Deliberate indifference is, however, "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).  "Sporadic or isolated violations" are not enough to put municipal policymakers on notice that inaction on their part will cause future violations; "only 'widespread or flagrant' violations will." *Owens*, 767 F.3d at 403 (quoting *Spell*, 824 F.2d at 1387).  In other words, liability will not "be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984).

Mr. Meredith fails to show a widespread pattern of excessive force by Prince George's County police officers. The only evidence he points to are newspaper reports of five excessive-force lawsuits filed against Price George's County officers between 2010 and 2016, (ECF No. 40-7), and the settlement of a prior excessive force claim against Officer Thomas, (ECF No. 40-4, at 7-9). Of the five lawsuits, three were filed after the events at issue in this case. (ECF No. 40-7, at 1, 7, 10). Another was filed six days before the events and did not settle until 2018. (*Id.*, at 5; *Goines v. Prince George's Cnty.*, No. 16-cv-0463-RWT, ECF No. 32, Settlement Order (D.Md. Feb. 1, 2018). Subsequent or unresolved lawsuits cannot create notice of unconstitutional behavior. *See Amann v. Prince George's Cnty.*, No. 99-cv-3759-DKC, 2001 WL 706031, at *2 (D.Md. June 15, 2001). That leaves Mr. Meredith with only one excessive force verdict against the County and the settled complaint against Officer Thomas.[6] That is not enough, even assuming the newspaper article is admissible and a violation occurred in the settled case. *See Connick*, 563 U.S. at 62 (holding four violations over ten years were insufficient); *Nicholson v. Balt. Police Dep't*, No. 20-cv-3146-DKC, 2021 WL 1541667, at *9 (D.Md. Apr. 20, 2021).

---

[6] In *Morales v. Prince George's County*, an officer "used excessive force" when he struck the plaintiff "while working as a security guard at a 2010 University of Maryland fraternity party[.]" (ECF No. 40-7, at 3).

Mr. Meredith's other arguments do not bring him any closer to showing that the County was deliberately indifferent to the widespread use of excessive force.  It is not enough that the County's corporate representative is aware that members of the public have objected to the use of force by County officers, (ECF Nos. 40, at 32; 40-5, at 20 (Alerte Depo.)), or that Officer Thomas may believe that he can frisk any person that he stops.  (ECF No. 40, at 29-30).  Nor is it enough to assert baldly that a "boatload of evidence" warned the County that it had an excessive force problem.  (*Id.*, at 29).  None of these arguments demonstrate that the use of excessive force was widespread and persistent within the department before February 2016.

Prince George's County is entitled to judgment because there are not enough facts to show that it condoned excessive force and, as a result, it cannot be held liable for Officer Thomas' conduct. Accordingly, summary judgment will be granted as to Count III.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment will be granted in part and denied in part.  A separate order will follow.

                                    /s/
                    _____
                    DEBORAH K. CHASANOW
                    United States District Judge